Belanger v. SSA                    CV-01-304-M    06/11/02
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Edna M. Belanger,
     Claimant

     v.                                     Civil No. 01-304-M
                                            Opinion No. 2002 DNH 113
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
     Respondent


                          **O R D E R**


     Pursuant to 42 U.S.C. § 405(g), claimant, Edna Belanger,

moves to reverse the Commissioner's decision denying her

application for Social Security Disability Insurance Benefits

under Title II of the Social Security Act, 42 U.S.C. § 423 (the

Act).  The Commissioner objects and moves for an order affirming

her decision.


                      **Factual Background**

I.   Procedural History

     In August of 1999, claimant filed an application for

disability insurance benefits under Title II of the Act, alleging

that in March of 1998, she became disabled due to pain in her

left shoulder, carpal tunnel syndrome, and adverse side-effects

of her medications.  The Social Security Administration denied her application initially and on reconsideration.

On November 9, 2000, claimant, her attorney, and a vocational expert appeared before an Administrative Law Judge (ALJ) who considered her claims de novo.  The ALJ issued his order on January 26, 2001, concluding that, although subject to some restrictions, claimant was capable of performing a range of light and sedentary work and was not, therefore, precluded from performing a significant number of jobs in the national economy.  On June 19, 2001, the Appeals Council denied claimant's request for review, thereby rendering the ALJ's disability determination the final decision of the Commissioner.

In response, claimant filed this action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.  Claimant then filed a "Motion to Reverse or Remand the Decision of the Commissioner" (document no. 8).  The Commissioner objected and filed a "Motion for Order Affirming the

2

Decision of the Commissioner" (document no. 10). Those motions are pending.


II. Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.


**Standard of Review**

I. Properly Supported Factual Findings by the ALJ
   are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and

<u>Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1]  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See <u>Tsarelka v. Secretary of Health and Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  <u>See also</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

---

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>See</u> <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

4

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a

5

continuous period of not less than 12 months." 42 U.S.C.

§ 416(i)(1)(A). The Act places a heavy initial burden on the

claimant to establish the existence of a disabling impairment.

See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v.

Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir.

1991). To satisfy that burden, the claimant must prove that her

impairment prevents her from performing her former type of work.

See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing

Goodermote v. Secretary of Health and Human Services, 690 F.2d 5,

7 (1st Cir. 1982)). Nevertheless, the claimant is not required

to establish a doubt-free claim. The initial burden is satisfied

by the usual civil standard: a "preponderance of the evidence."

See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers

both objective and subjective factors, including: (1) objective

medical facts; (2) the claimant's subjective assertions of pain

and disability, as supported by the testimony of the claimant or

other witnesses; and (3) the claimant's educational background,

age, and work experience. See, e.g., Avery v. Secretary of

Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986);

6

Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.920.  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the determination that claimant is not disabled.

## Background

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability.  Next, the ALJ concluded that the

medical evidence of record indicates that the claimant has "problems with her left shoulder, carpal tunnel syndrome and effects of medications, impairments that are severe within the meaning of the Regulations." Transcript at 16. However, the ALJ determined that claimant's impairments were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id.

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that she:

> retains the residual functional capacity to lift and carry and push or pull no more than 20 pounds occasionally and only up to 10 pounds frequently. Further, the claimant cannot repetitively reach above shoulder level, cannot perform tasks requiring fine finger movement and is moderately limited in her ability to understand, remember and carry out complex work instructions.

Transcript at 17. In light of that assessment of claimant's RFC, the ALJ concluded that she could not perform her past relevant work, which required her to lift 50 pounds occasionally and up to 25 pounds frequently. He did, however, find that claimant was capable of performing a range of light and sedentary work, with

9

some limitations imposed by her exertional and non-exertional impairments.  Id.

Finally, the ALJ asked the vocational expert whether there is a significant number of jobs in the national economy that might be performed by an individual with claimant's age, educational background, and exertional and non-exertional limitations (as found by the ALJ).  The vocational expert opined that there is a significant number of jobs that such an individual might perform.  Consequently, at the close of the hearing, the ALJ informed claimant and her attorney that, based on the evidence and testimony before him, he felt compelled to conclude that claimant was not disabled and specifically asked claimant's counsel what evidence supported claimant's assertion that she is disabled.

        ALJ:    Based upon the evidence that I've seen . . . and
                heard, I've got a denial of benefits here.

        ATTY:   I know I've . . . asked you before and you, you said
                you can't do this, but if I could . . . have two
                weeks to get the consultive examination in from her
                treating doctor now, I would appreciate that. . . ..

        AJL:    - what is he going to tell me?

10

> ATTY: Well, he might - he might disagree with, with what
> you think she can do on the - as to, you know, the
> eight-hour, for instance.

Transcript at 50-51. Later, the ALJ again asked claimant's attorney what evidence might support a finding of disability.

> ALJ: Do you have any proposal as to how you're going to
> overcome a denial at this point?
>
> ATTY: Well, the only thing I can say, Your Honor, is that
> the doctor who is treating her is -
>
> ALJ: Which doctor are we talking about?
>
> ATTY: I think it's Dr. [Toczylowski] who is the one that
> she has switched to recently. And his most recent
> report that we have is . . . May. If he is more
> specific as to her limitations as to the problems,
> physical, that she has and, and if he is . . .
> specific as to what her limitations are, that could
> be a situation where that's new medical evidence that
> neither you, Judge, or the VE has had an opportunity
> to see. That's basically it.

Transcript at 56-57.

In light of those exchanges, the ALJ granted claimant one week within which to submit additional evidence from her treating sources. Claimant took the opportunity to supplement the record with additional evidence she felt supported her disability claim. First, she presented Dr. Toczylowski's "Medical Assessment of

11

Ability to do Work-Related Activities," in which he concluded that although claimant's impairments did not affect her ability to sit, stand, or walk for up to eight hours a day, she can not lift more than five pounds even occasionally. Transcript at 380. Additionally, claimant provided a Medical Assessment of Ability to do Work-Related Activities completed by her physical therapist, Candice Mangio, in which Ms. Mangio opined that claimant: (1) could, at most, lift no more that five pounds occasionally; (2) has decreased shoulder strength and grip strength; and (3) might pose a safety hazard to herself and/or those around her if she were required to lift or carry objects as part of her employment. Transcript at 374.

In the end, however, the ALJ concluded that, "Dr. Toczylowski medically assessed the claimant as being able to perform physical functions consistent with a range or light and sedentary work." Transcript at 16. Similarly, he determined that, "claimant's physical therapist also assessed the claimant with the functional ability to perform [a] range of light and sedentary work with limitations against overhead reaching due to pain, decreased strength and limitation of motion involving the

12

upper extremity." Id. Accordingly, at step five of the sequential analysis, the ALJ concluded that claimant "is capable of making a successful adjustment to work that exists in significant numbers on the national economy. A finding of 'not disabled' is therefore reached within the framework of Medical-Vocational Rules . . .." Transcript at 18-19.

In support of her motion to reverse or remand, claimant raises three arguments: first, that the ALJ erroneously assessed her RFC; second, that the ALJ incorrectly calculated her age and improperly treated her as a "younger individual," rather than as someone "approaching advanced age"; and, finally, that the ALJ improperly discounted claimant's subjective complaints of pain. The Commissioner defends each of the challenged decisions by the ALJ as either substantially supported by record evidence or, in the case of the erroneous calculation of claimant's age, as immaterial to the ALJ's ultimate finding of no disability.

Because the court concludes that the ALJ's determination of claimant's RFC is not supported by substantial evidence, it need not address the merits of her remaining claims.

## Discussion

The record contains the opinions of four individuals - three doctors (at least two of whom qualify as "treating sources") and a physical therapist - who opined that claimant is incapable of lifting more than five pounds even occasionally.[2]  See Treatment notes of Alan Curtis, M.D., Transcript at 224 (opining that claimant could lift no more than five pounds); Consultative Evaluation notes of Denrick Crespi, D.O., Transcript at 232 (same); Medical Assessment of Candice Mangio, PT, Transcript at 374 (same); Medical Assessment of Harry Toczylowski, M.D., Transcript at 379 (same).  Notwithstanding those opinions, the ALJ concluded that claimant retains the residual functional capacity to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently.

The ALJ appears to have based his opinion, at least in part, on an erroneous interpretation of some of the medical evidence before him.  For example, he concluded that, "Dr. [Toczylowski] medically assessed the claimant as being able to perform physical

---

[2]     Both Dr. Curtis and Dr. Toczylowski qualify as "treating sources."  See 20 C.F.R. § 404.1527(d).

14

functions consistent with a range of light and sedentary work."
Transcript at 16. As noted above, however, Dr. Toczylowski
opined that claimant was not capable of lifting more than five
pounds even occasionally. Id., at 379. With regard to the
treatment notes and evaluation prepared by Ms. Mangio, the ALJ
concluded, "the claimant's physical therapist also assessed the
claimant with the functional ability to perform [a] range of
light and sedentary work." Id., at 16. Again, however, that
interpretation of the medical evidence is not accurate. Like
several other health care providers, Ms. Mangio opined that
claimant was incapable of lifting or carrying more than five
pounds, id., at 374 - a functional limitation which, if true,
would disqualify claimant from performing even sedentary work.[3]

---

[3]     Social Security Ruling 96-9p, 1996 WL 374185 (July 2,
1996), provides that, "The ability to perform the full range of
sedentary work requires the ability to lift no more than 10
pounds at a time and occasionally to lift or carry articles like
docket files, ledgers, and small tools." If claimant can lift no
more than five pounds even occasionally, she would not be capable
of performing a full range of sedentary work (nor, necessarily,
could she perform the more strenuous tasks associated with
"light" work). Moreover, even if claimant were capable of
performing a full range of sedentary work (though not light
work), she would still be disabled in light of her age,
education, and work history. See Medical-Vocational Guidelines
of Appendix 2 of Subpart P of the Regulations (also known as the
"Grid"), § 201.09.

15

In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairments(s) . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give you treating source's opinion.

20 C.F.R. § 404.1527(d)(2). See also Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996) (when the ALJ renders an adverse disability decision, his or her notice of decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."). Here, the ALJ appears to have misinterpreted the

16

medical opinions of some of claimant's medical professionals, including two of her treating sources. At a minimum, he did not adequately explain the basis for his decision not to give controlling weight to those medical opinions.[4]

To be sure, there is some evidence in the record supportive of the notion that claimant is capable of lifting perhaps as much as 20 pounds on an infrequent basis, and 10 pounds more frequently. See Functional Capacity Assessment prepared by Hugh Fairley, M.D., dated November, 1999, transcript at 241; Functional Capacity Assessment prepared by Marci Lipski, dated February, 2000, transcript at 246. Importantly, however, neither Dr. Fairley nor Dr. Lipski was a treating source, nor did either have the benefit of the reports prepared by Dr. Toczylowski and Ms. Mangio, which the ALJ allowed claimant to add to the record shortly after the administrative hearing. See generally Rosario v. Apfel, 85 F. Supp. 2d 62, 67-69 (D.Ma. 2000) (discussing the situation in which a non-examining physician opines as to a

_____

[4] While the ALJ's opinion discusses (and seems, at least in part, to misinterpret) the most recent opinions given by Dr. Toczylowski and Ms. Mangio, it does not specifically address (or discuss why the ALJ chose to discount) Dr. Curtis's opinion that claimant is capable of lifting and carrying no more than five pounds.

claimant's RFC without having had the opportunity to review claimant's entire medical record).

This case, like many of its sort, presents a close and difficult call. In the end, however, the court is constrained to conclude that the ALJ failed to adequately explain the basis of his decision to discount the opinions of claimant's health care providers (at least two of whom are "treating sources"), who opined that she is incapable of lifting or carrying more than five pounds on even an infrequent basis. In the absence of such an explanation, the court cannot conclude that there is substantial evidence in the record to support the ALJ's determination that claimant is capable of lifting and carrying up to 10 pounds frequently and as much as 20 pounds infrequently. Consequently, the ALJ's determination that claimant is capable of performing a range of light and sedentary work also lacks substantial support in the record. See generally 20 C.F.R. § 404.1527(d)(2).[5]

---

[5] Parenthetically, the court notes that the ALJ's conclusion that, "The claimant's daily activities are not significantly impacted by her pain or subjective complaints," transcript at 17, appears to be inconsistent with claimant's largely unrebutted testimony concerning her daily activities and the extent to which she depends upon her sister for assistance.

## Conclusion

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that the ALJ's disability determination is not supported by substantial evidence in the record. Accordingly, claimant's motion to reverse or remand the decision of the Commissioner (document no. 8) is granted in part and denied in part. To the extent claimant seeks a remand of this matter, her motion is granted. In all other respects, it is denied. The Commissioner's motion to affirm her decision (document no. 10) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

---

See Transcript at 27, 30, 35-38, and 41.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 11, 2002

cc:  Tanya P. Millett, Esq.
     Kenneth F. Langley, Esq.
     David L. Broderick, Esq.